IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


EVA BULLARD,                   )
                               )
       Plaintiff,              )
                               )      CIVIL ACTION NO.
       v.                      )        2:05cv008-T
                               )          (WO)
MIKE FINLEY,                   )
                               )
       Defendant.              )


OPINION

In this lawsuit, plaintiff Eva Bullard claims that defendant Mike Finley, a police officer with the City of Andalusia, Alabama, violated the Fourth Amendment of the United States Constitution (as enforced through 42 U.S.C.A. § 1983) and Alabama law when he used excessive force and assaulted her during a crime-scene confrontation.[1]

---

1. Based on representations of the parties at a pre-trial conference, the court issued an order on December 5, 2005 (Doc. No. 44) dismissing plaintiff Jan McIntyre and her claims, defendant Officer Roger Cender, and defendant City of Andalusia, Alabama.

Jurisdiction over Bullard's federal claim is proper pursuant to 28 U.S.C.A. §§ 1331 (federal question) and 1343 (civil rights); supplemental jurisdiction over the state-law claim is proper under 28 U.S.C.A. § 1367.

This case is before the court on Finley's motion for summary judgment. As explained below, the motion will be granted.

I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 249 (1986).  In doing so, the court must view the
evidence in the light most favorable to the non-moving
party and draw all reasonable inferences in favor of that
party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio
Corp.</u>, 475 U.S. 574, 587 (1986).


## II. BACKGROUND

The facts, presented in the light most favorable to
Bullard, the non-moving party, are as follows:[2]

On January 17, 2004, Greg Palmer received a telephone
call advising him that his sister's house was being
burglarized; Palmer's sister and her husband were out of

---

2.  The facts of this case are extensively set forth
in the transcript of the state-court criminal trial of
former plaintiff Jan McIntyre, who was convicted by a
jury of obstructing governmental operations during the
events in question.  Exhibit 1 to brief in support of
defendants' motion for summary judgment (Doc. No. 19),
orders of June 15, 2005, and June 18, 2005, by Charles A.
Short, Circuit Judge, in <u>City of Andalusia v. McIntyre</u>,
Circuit Court of Covington County, Alabama, case no. CC-
2004-175.

town.[3]  Palmer called the police and drove to his sister's

house with his wife and several friends.  Police officers

arrived and ultimately arrested two burglary suspects.[4]

Finley, who had arrived on the scene after the

initial arrests, agreed to stand guard in the nearly

mile-long driveway leading up to the house as a search

was conducted.[5]  Meanwhile, after hearing about police

activity at the home, Bullard (who was the mother of the

homeowner), her daughter, and her 17-year-old

granddaughter arrived separately.

Finley was under orders that, because an

investigation was underway, he was not to allow anyone to

approach the house.[6]  In the driveway, Bullard and her

daughter repeatedly insisted that they be allowed into

--------------------

3.  Attachment 1 to brief in support of defendants'
motion for summary judgment (Doc. No. 19), trial
transcript of City of Andalusia v. McIntyre, Circuit
Court of Covington County, Alabama, case no. CC-2004-175
("Trial transcript"), p. 8.

4.  Trial transcript, pp. 84, 120

5.  Id., p. 173-174.

6.  Id., pp. 152-153.

4

the house,[7] and Finley called for backup assistance.[8]
When the daughter tried to walk past Finley,[9] he
physically stopped her by grabbing her arm and stated
that he was securing the scene, that he had no further
information, and that he would be forced to arrest her if
she continued to attempt to reach the house.[10]

While Finley spoke to Bullard, another officer
arrived and began speaking to Bullard's daughter.[11] The
confrontation between the officer and the daughter
escalated, and the officer attempted to place the
daughter under arrest. Bullard's daughter twice evaded
the officer's attempts to handcuff her in such a way that

---

7. Attachment 7 to brief in support of defendants'
motion for summary judgment (Doc. No. 19), deposition of
Eva Bullard ("Bullard deposition"), p. 63-64, 66; Trial
transcript, p. 182.

8. Trial transcript, p. 186.

9. Id., p. 182.

10. Id., pp. 182-183.

11. Id., pp. 188-189.

5

he fell to the ground.[12]   The daughter began moving
towards her car, the officer sprayed her with pepper
spray, and the daughter fell to the ground, where she was
handcuffed.[13]

While the testimony concerning Bullard's subsequent
actions is conflicting, it is undisputed that as her
daughter was being escorted to a police vehicle in
handcuffs,  Bullard approached and put her arms around
her daughter.  Her daughter testified in deposition:

> "A. She touched me and grabbed me when
> he was taking me to the police car.
> I remember Mother coming up and
> holding me and trying to--she was
> in front of me not letting him--
> you know, she said, you don't--
> this is a mistake.  You shouldn't
> do this. ... She was in front of
> me. [Officer] Cender was behind me
> pushing.  To my knowledge – I could
> not see--she never touched Cender,
> because she was in front of me
> holding me the whole time, because
> I couldn't breath[e]. ...

12. Attachment 6 to brief in support of defendants'
motion for summary judgment (Doc. No. 19), deposition of
Jan McIntyre ("McIntyre deposition"), p. 202.

13. Id., p. 211.

> "Q. Does she stand between you and the
>     path Officer Cender is walking you
>     on?
>
> "A. Yes, sir.
>
> "Q. In other words, she was blocking
>     the path that he was trying to use
>     to take you to the police car?
>
> "A.     Yes, sir."[14]

Elsewhere in the record, Bullard's actions were described by her daughter similarly: "My mother was saying that she was not going to let them arrest me. ... They were telling Mother to calm down or they were going to have to handcuff her also. ... I felt my mother hugging me and pulling at me and telling me not to get in the car."[15]

Bullard denies that she blocked the officer's path, describing the scene in the following way: "And naturally when they maced [my daughter], she was crying.  And I

---

14. <u>Id.</u>, pp. 214-215.

15. Attachment 13 to brief in support of defendants' motion for summary judgment (Doc. No. 19), Plaintiffs answer to 2nd request for admissions, p. 5.

went to her and put my arms around her and trying to console her."[16]

Officer Finley's response to these actions forms the crux of the matter before the court, and, although the precise chronology is somewhat muddied in the record, it is undisputed that Finley attempted to remove Bullard from the immediate vicinity as her granddaughter leapt onto his back.[17] A third officer on the scene prepared to use pepper spray against Bullard.[18]  In Bullard's own words: "[Finley] said, I'll handcuff you.  And I slung away from him.  I said, no, you won't.  He grabbed me, physically grabbed me and slung me into the board fence."[19]

---

16. Bullard deposition, p. 34.

17. Trial transcript, p. 552.

18. Attachment 3 to notice of filing exhibits in support of defendants' reply to plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 27), deposition of Mike Finley ("Finley deposition"), p. 105.

19. Bullard deposition, p. 35.

8

Subsequently, as Bullard's daughter shouted from the police car for her mother to cross the police line[20], Bullard entered her vehicle and attempted to drive toward the house, finally stopping after pushing Finley, who had stepped in front of the vehicle, back several paces.[21]

Bullard was never arrested. She claims to have sustained bruises and contusions on her arm from Finley's attempt to remove her. Later in the evening of the incident, she went to the emergency room. The next morning, she was told she had had a heart attack, and was hospitalized for a week.[22] Bullard, however, has produced no medical evidence to sustain that she, in fact, had had a heart attack.

---

20. Trial transcript, p. 198.

21. Bullard deposition, p. 37; trial transcript, p. 201.

22. Id., pp. 40-41.

9

### III. FEDERAL CLAIM: EXCESSIVE FORCE

Bullard alleges that Finley used excessive force when he threw her into a fence.  Bullard correctly asserts her claim under the Fourth Amendment to the United States Constitution: "All claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 394 (1989).

Although Finley's actions were limited to physically removing Bullard from the immediate vicinity of an arrest-in-progress, did not result in further restraint or arrest, and did not stop Bullard from continuing her attempts to cross a police line, his actions nonetheless constituted a seizure. See California v. Hodari D., 499 U.S. 621, 626 (1991) ("application of physical force to restrain movement, even when it is ultimately unsuccessful," is sufficient to constitute a seizure);

10

<u>Yelverton v. Vargo</u>, 386 F.Supp.2d 1224, 1228 (M.D. Ala. 2005) (Thompson, J.) (police officer's spraying of truck driver with pepper spray, as driver was taking vehicle out of parking lot of bar in violation of officer's order to stop, was "seizure" for Fourth Amendment purposes, even though spraying did not prevent driver from leaving scene).

Finley has raised the affirmative defense of 'qualified immunity.' This doctrine insulates government agents from personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982). To be entitled to qualified immunity, a defendant must establish "that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred."[23] <u>Sims v. Metropolitan Dade</u>

_____

23. The term 'discretionary authority' includes all acts of a governmental official that are (1) undertaken pursuant to the performance of official duties and (2) within the scope of the official's authority. <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994). It is (continued...)

County, 972 F.2d 1230, 1236 (11th Cir. 1992). Once this is proven--and no one disputes that Finley acted within his discretionary authority--the burden shifts to the plaintiff to show that qualified immunity is not appropriate.   Crosby v. Monroe County, 394 F. 3d 1328, 1332 (11th Cir. 2004).

A two-step analysis ensues: "The threshold inquiry is whether plaintiff's assertions, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002).  If the court determines that the plaintiff has not alleged a deprivation of a constitutional right, then the inquiry ends.  County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998).  However, if the court determines that the plaintiff has, in fact, alleged a deprivation of a constitutional right, then further inquiry is needed as to "whether that right allegedly

_____

23. (...continued)
undisputed that, during the events in question, Finley was acting in his capacity as a police officer. Therefore, his acts were within the scope of his discretionary authority.

12

implicated was clearly established at the time of the events in question." Id. Even if a constitutional violation occurred, public employees are shielded from liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. In sum, "[i]n order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it." Crosby, 394 F.3d at 1332.

In analyzing an excessive-force claim, the key inquiry "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. It is well established that the government's right

to make an arrest or investigatory stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Id. at 396. The court must be mindful to judge an officer's acts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.  Moreover, the court must allow for the fact that police officers "must often make split-second judgments-- in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation."  Id. at 397.

From this perspective, the court must also balance several factors in evaluating the proper application of force, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  The force used by the officer must be reasonably proportionate to the need for force in

14

light of these factors.   <u>Lee v. Ferraro</u>, 284 F.3d 1188,
1198 (11th Cir. 2002).

A. <u>Legitimacy of the Use of Force</u>:   Bullard appears
to argue that, because Finley did not arrest her, his use
of force by definition was a constitutional violation.
In <u>Jones v. City of Dothan</u>, 121 F.3d 1456 (11th Cir.
1997), the appellate court found no constitutional
violation when officers 'slammed' the plaintiff against
a wall and kicked his legs apart (later requiring the
plaintiff to seek medical treatment for his arthritic
knee), but did not ultimately arrest the plaintiff.
Implicit in <u>Jones</u> is the understanding that an officer's
decision not to arrest a person against whom force has
been applied does not render the application of that
force per se excessive.

Here, although Bullard was not a suspect in a crime,
Finley and the other officers at the scene certainly had
the authority to assert some level of control over her
actions.   "A police officer performing his lawful duties

15

may direct and control--to some extent--the movements and location of persons nearby, even persons that the officer may have no reason to suspect of wrongdoing." <u>Hudson v. Hall</u>, 231 F.3d 1289, 1297 (11th Cir. 2000); <u>see also Michigan v. Summers</u>, 452 U.S. 692, 702-703 (1981) ("The risk of harm to both the police and the occupants [of a house during a search] is minimized if the officers routinely exercise unquestioned command of the situation."). The simple fact that Bullard was not arrested does not revoke the otherwise legitimate status of the force used against her.

Bullard also asserts that she posed no threat and that this should have been apparent because Finley is both younger and larger than she is.[24] Yet the undisputed facts show that Bullard physically interjected herself in the on-going arrest of her daughter, who had actively resisted that arrest. That a reasonable officer would have believed some degree of force would be required to

_____

24. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 23), p. 11.

control Bullard's actions is not only self-evident, it is
supported by the fact that another officer at the scene
was preparing to use pepper spray against her.

Even giving full credence to Bullard's assertion that
her only intent was to comfort her daughter and
disregarding evidence that Bullard verbalized her intent
to prevent the arrest of her daughter,[25] the court must
still hold that the only reasonable conclusion, from the
perspective of a reasonable officer on the scene, is that
some force was necessary.  Such an officer would have
observed Bullard challenging the officer's instructions
to stay away from the crime scene, Bullard's daughter
vigorously and physically resisting a lawful arrest, and
Bullard physically attaching herself in some way to her
daughter as her daughter was led away in handcuffs.  Any
reasonable officer could have interpreted Bullard's

_____

25. Attachment 13 to brief in support of defendants'
motion for summary judgment (Doc. No. 19), plaintiffs'
answer to 2nd request for admissions, p. 5.

17

interference as an attempt to prevent the arrest of her daughter.

B. <u>Proportionality of Force</u>:  While Finley acted well within his authority in applying some level of force when separating Bullard from her daughter and the arresting officer, the court must review whether the amount of force used was reasonably proportionate to the need: Finley slung Bullard away from the scene, and she hit a fence.

As discussed above, a reasonable officer could have interpreted Bullard's actions as interfering with an arrest during which the arrestee had already physically resisted the arresting officer.  Finley was then required to make a 'split-second' decision about the amount of force necessary to separate Bullard from her daughter. He made this decision in the context of Bullard's own resistance ("I slung away from him.  I said, no, you won't."),[26] as well as the interference of Bullard's

_____

26. Bullard deposition, p. 35.

18

granddaughter, who by this time had leaped onto Finley's back. Indeed, Finley confronted precisely the type of tense, uncertain, and rapidly evolving situation envisioned in <u>Graham</u>.

It is certainly regrettable that Bullard sustained injuries from this unfortunate confrontation, but "government officials are not required to err on the side of caution." <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001) (en banc). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ... violates the Fourth Amendment." <u>Graham</u>, 490 U.S. at 396.

The Eleventh Circuit in <u>Jones v. City of Dothan</u>, 121 F.3d 1456 (11th Cir. 1997), where the plaintiff was forced to seek medical attention after officers 'slammed' him into a wall and kicked his legs apart, found that "the actual force used and the injury inflicted were both minor in nature." <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1460 (11th Cir. 1997). Similarly, the court here

19

finds that, in the specific context of the circumstances faced by Finley, his use of force in slinging Bullard away from the scene, with the result that she hit a fence, was reasonably proportionate to the need for force in light of the <u>Graham</u> factors.

The possibility that Bullard may have suffered a heart attack subsequent to the events in question does not change the analysis.[27]   "What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1353 (11th Cir. 2002) (finding no constitutional violation when arrest resulted in amputation of arrestee's arm because of serious pre-existing injuries of which officers were unaware); <u>see also Silverman v.</u>

_____

27. Indeed, because Bullard has presented no admissible medical evidence to support her statement that she suffered a heart attack, Finley objects to the statement as inadmissible hearsay.  The court need not resolve this objection.

Ballantine, 694 F.2d 1091 (7th Cir. 1982) (concluding that force used was not, as a matter of law, excessive even though arrestee died of heart attack during arrest).

Even if not the result of a pre-existing condition, Bullard has failed to show that her claimed injury--a heart attack--was a 'likely consequence' of the method of force used by Finley.  Absent such a showing, the injury remains irrelevant to the constitutional inquiry. Garrett v. Athens-Clarke County, 378 F.3d 1274 (11th Cir. 2004) (finding no constitutional violation in plaintiff's death by asphyxiation after being 'hog-tied' during an arrest, when use of force was otherwise reasonable and no evidence was presented that death was a likely consequence).

Because Bullard's assertions fail to state a constitutional violation, the analysis of Finley's qualified- immunity defense ends, and summary judgment will be granted in favor of Finley on Bullard's federal claim.

## IV.  STATE-LAW CLAIM: ASSAULT AND BATTERY

Bullard asserts a claim of assault and battery against Finley under Alabama common law.  Finley responds that he is immunized from such a claim by state law, 1975 Alabama Code § 6-5-338(a), which grants statutory immunity from tort liability to police officers for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."[28]  The immunity, however, does not protect

_____

28. 1975 Code of Alabama § 6-5-338(a) reads:

> "Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of,
>
> (continued...)

conduct that is "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." Couch v. City of Sheffield, 708 So. 2d 144, 153 (Ala. 1998).

To apply discretionary-function immunity, the court must first determine whether the police officer was performing a discretionary function when the alleged wrong occurred.  If so, "the burden shifts to the plaintiff to demonstrate that the defendant acted in bad faith, with malice or willfulness in order to deny [him]

------------------------------------------------

        28.  (...continued)
              or the investigation and reporting of
              violations of, the criminal laws of this
              state, and who is empowered by the laws
              of this state to execute warrants, to
              arrest and to take into custody persons
              who violate, or who are lawfully charged
              by warrant, indictment, or other lawful
              process, with violations of, the
              criminal laws of this state, shall at
              all times be deemed to be officers of
              this state, and as such shall have
              immunity from tort liability arising out
              of his or her conduct in performance of
              any discretionary function within the
              line and scope of his or her law
              enforcement duties."

23

immunity."  Scarbrough v. Myles, 245 F.3d 1299, 1303 n.9
(11th Cir. 2001) (alteration in original) (applying
Alabama law and quoting Sheth v. Webster, 145 F.3d 1231,
1239 (11th Cir. 1998) (per curiam)).

Bullard asserts that, because "it is not proper for
a police officer to assault and batter citizens," Finley
was not performing a discretionary function during the
events in question.[29]  In addition to assuming the fact
that the argument seeks to establish--that an assault
occurred--this argument misapprehends the concept of
discretionary function under state law:  "Simply stated,
the statute shields every defendant who (1) is a 'peace
officer,' (2) is performing 'law enforcement duties,' and
(3) is exercising judgment or discretion."  Howard v.
City of Atmore, 887 So. 2d 201, 204 (Ala. 2003).  It is
undisputed that Finley qualifies as a peace officer, and
for reasons stated above, it was within the scope of
proper law-enforcement duties for him to assert some

_____

    29. Brief in opposition to defendants' motion for
summary judgment (Doc. No. 23), p. 13.

level of control over Bullard's actions at the scene, even though Bullard herself was not a criminal suspect.

There is no evidence of the malice, willfulness, or bad faith required to overcome the immunity granted by statute.  Bullard seems to argue that such evidence can be gleaned from the fact that she was not arrested. Although believed he could have arrested Bullard for obstructing a governmental operation, disorderly conduct, and resisting arrest,[30] he did not do so because he felt that Bullard had not precipitated the confrontation.[31] Therefore, his decision not to arrest her indicates, if anything, that he acted entirely without malice or bad faith in his interactions with Bullard.  Summary judgment

---

30. Finley deposition, pp. 133-135.

31. Finley testified as follows:

   "Q. Why wasn't [Bullard] arrested?

   "A. Because it was my judgment, opinion, and I felt that Ms. McIntyre [Bullard's daughter] caused the situation."

Id., p. 135.

is appropriate on Bullard's state-law assault-and-battery claim.

## V. CONCLUSION

For the foregoing reasons, the court concludes that summary judgment in favor of Finley is due on Bullard's federal and state-law claims.  An appropriate judgment will be entered.

DONE, this the 29th day of December, 2005.


_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE